UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TION ALONZO GRIMMETT HILL, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>A. YOUSSEF, *et al.*,<br><br>Defendants. | Case No.  2:23-cv-0492-JDP (P)<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner, brought this action under section 1983 alleging that defendants Nguyen, Youssef, Branch, and Miranda violated his Eighth Amendment rights by failing to provide adequate medical care for his injured left eye.  Now, all defendants have moved for summary judgment.  Defendant Nguyen has filed her own motion, ECF No. 30, and the other defendants have submitted a second, separate motion, ECF No. 51.  Both should be granted.

<u>Legal Standards</u>

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party,

1

while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477

1    U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material
2    issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to
3    require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W.*
4    *Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).
5          The court must apply standards consistent with Rule 56 to determine whether the moving
6    party has demonstrated there to be no genuine issue of material fact and that judgment is
7    appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
8    "[A] court ruling on a motion for summary judgment may not engage in credibility
9    determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.
10   2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the
11   nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.
12   *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*,
13   198 F.3d 1130, 1134 (9th Cir. 2000).

Background

15         The background facts are recited here for both motions, as there is substantial overlap in
16   the pertinent facts.  Plaintiff suffered injuries to both of his eyes in January 2022 after being
17   involved in an altercation at Kern Valley State Prison.  ECF No. 38-5 at 3 ¶ 8.  He received
18   treatment from a non-defendant ophthalmologist, Dr. Tawansy, from January to May 2022,
19   including a complex repair to his left eye.  *Id.* at 3-4 ¶¶ 9-15.  Then, on June 1, 2022, plaintiff was
20   transferred to Wasco State Prison and, on June 14, 2022, saw a different ophthalmologist, Dr.
21   Bonds.  *Id.* at 4 ¶¶ 16-17.  Plaintiff complained to Dr. Bonds that he was experiencing pain in the
22   left eye and that his vision was poor.  *Id.* at 4 ¶ 17, 9-10.  Bonds believed that plaintiff had a
23   detached retina.  *Id.*
24         Three days later, on June 17, 2022, plaintiff was cleared for transfer to High Desert State
25   Prison.  *Id.* at 4 ¶ 19.  No medical hold was placed, *id.*, and the transfer occurred on June 20,
26   2022.  ECF No. 38-6 at 4.  He met with defendant Miranda, a physician's assistant, on June 28,
27   2022.  ECF No. 38-4 at 2 ¶ 4.  He repeated his complaints about poor vision in his left eye.  *Id.*
28   Miranda noted that a request for ophthalmology service was already approved and scheduled a

follow-up appointment for July 20, 2022. *Id.* Miranda noted, at that time, that a follow up with ophthalmology needed to be ordered, and a week later it was confirmed. *Id.* at 2-3 ¶¶ 6-8.

Plaintiff had an appointment with defendant Branch, a physician at High Desert, on August 11, 2022. ECF No. 38-3 at 2 ¶ 4. An ophthalmologist appointment was pending for later in the month and Branch offered him Tylenol for the headaches associated with the eye disfunction. *Id.*

Plaintiff was transferred to Kern Valley on August 19, 2022. ECF No. 38-6 at 4. On August 23, 2022, he had another appointment with Dr. Bonds, and the latter recommended surgery for his left eye. ECF No. 38-3 at 15. Medical staff at Kern Valley submitted a request for surgery on August 25, 2022, and it was approved that day. ECF No. 38-3 at 29-30. Surgery could not be performed by either Dr. Bonds or Tawansy, however. *Id.* at 24. A new specialist evaluation was scheduled for August 29, 2022. *Id.* at 23.

Dr. Pektar, a non-defendant ophthalmologist, evaluated plaintiff on August 29, 2022. *Id.* at 17-22. Pektar, unlike Bonds, did not recommend surgery after determining that it would not improve plaintiff's vision. *Id.* at 19. Plaintiff requested a third specialist opinion and medical staff put in the request. *Id.* at 27. That request was denied with instructions to contact Pektar to discuss his findings and "rationale for a plan of care." *Id.* at 32. Then, plaintiff's primary care provider was to "provide a detailed clinical justification if a 3rd opinion [was] still indicated." *Id.*

Plaintiff was transferred back to High Desert on September 26, 2022. ECF No. 38-6 at 4. Defendant Nguyen evaluated plaintiff on October 27, 2022. ECF No. 38-3 at 10. She noted that the last provider, Pektar, did not recommend surgery due to a poor prognosis. *Id.* Dr. Nguyen seconded that prognosis. *Id.* The encounter notes indicate that plaintiff did not want eyelid surgery, a separate procedure that would not have improved his vision, only the appearance of his eyelid. *Id.* at 10; 19. Dr. Pektar did not indicate whether he recommended that the cosmetic surgery be provided or what its prognosis might be.

      I.      <u>Defendant Nguyen's Motion</u>

Defendant Nguyen argues that she is entitled to summary judgment because no reasonable finder of fact could find that she acted with deliberate indifference or violated plaintiff's

1  Fourteenth Amendment rights.  I agree.

2  Nguyen has provided a declaration from David Mark, a licensed ophthalmologist.  ECF
3  No. 30-4 at 32.  Dr. Mark opines that, given the condition of plaintiff's eye, the potential risks of
4  eyelid surgery would have outweighed the benefits.  ECF No. 30-4 at 34.  He notes that surgery
5  could have led to additional inflammation, pain, and accelerated the phthisis.  *Id.*  Dr. Mark also
6  opines that all of Dr. Nguyen's treatment of plaintiff fell within the appropriate standard of care.
7  *Id.*  To state a claim for medical deliberate indifference under the Eighth Amendment, plaintiff
8  must prove not merely that his treatment was suboptimal, but that the defendant was aware of a
9  risk to his health and denied delayed or intentionally interfered with his treatment.  *See Toguchi v.*
10  *Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004) ("A showing of medical malpractice or
11  negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment . .
12  . . The Toguchis have no[t] presented evidence that Dr. Chung's decisions denied, delayed, or
13  intentionally interfered with [claimant's] medical treatment.") (internal quotation marks omitted).
14  Here, Dr. Mark has opined that the decision not to recommend surgery was medically defensible
15  and within the standard of care.

16  In his opposition, plaintiff maintains that the examination records from his encounter with
17  Dr. Nguyen are false and that he did not refuse eyelid surgery.  ECF No. 34 at 6-7.  It appears that
18  there are at least two possible surgical interventions at issue.  The first, which Dr. Pektar and Dr.
19  Nguyen rejected as medically unsound, is any attempt to repair plaintiff's vision in the left eye.
20  Given that Dr. Pektar had already determined that this surgery was unlikely to succeed, a claim
21  that Dr. Nguyen was deliberately indifferent in failing to recommend it is foreclosed.  Plaintiff
22  has not provided any countervailing medical evidence.  Even if both Pektar and Nguyen were
23  wrong, there is no evidence that they were reckless or intentionally ignored a risk to plaintiff's
24  health.

25  The second surgical intervention concerns surgery to plaintiff's eyelid, a procedure that
26  Dr. Pektar characterized as cosmetic.  ECF No. 38-3 at 19.  As noted, plaintiff contends that he
27  was interested in that surgery and that Dr. Nguyen falsely noted that he was not.  Surgery to
28  plaintiff's eyelid to improve its appearance is not a "serious medical need" in the context of an

5

Eighth Amendment claim. To show that such a need, a claimant must demonstrate that the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). Plaintiff has not provided any medical evidence that the failure to provide him with cosmetic eyelid surgery risked significant physical injury or the unnecessary and wanton infliction of pain. Accordingly, I find that Dr. Nguyen is entitled to summary judgment on plaintiff's Eight Amendment claim against her.

Defendant Nguyen also addresses a potential Fourteenth Amendment claim against her, ECF No. 30-1 at 6, but only Eighth Amendment claims survived screening, ECF No. 5 at 3. I also deny plaintiff's motion seeking a "clear/visible" photograph. ECF No. 35. This motion addresses the quality of a photograph Dr. Nguyen provided in conjunction with her summary judgment motion. I agree that the photograph in question is of poor quality, ECF No. 30-4 at 43, but I have not relied upon it in adjudicating the motion and plaintiff has not offered any rationale explaining how a better-quality photograph would have bolstered his own response to the motion.

    II.      <u>Defendant Youssef, Branch, and Miranda's Motion</u>

          A.      <u>Defendant Youssef</u>

Defendant Youssef argues that, as Chief Medical Executive at Wasco State Prison, never treated or examined plaintiff. ECF No. 38-5 at 2 ¶ 6. Plaintiff nevertheless alleges that Youssef violated his rights by failing to place a temporary medical hold that would have halted his transfer from Wasco to High Desert Prison in June 2022. ECF No. 1 at 3-4. Defendant Youssef is entitled to summary judgment for two reasons. First, he declares that, if a medical hold had been deemed necessary, plaintiff's primary care physician, not the Chief Medical Executive, was tasked with requesting it.[1] ECF No. 38-5 at 5 ¶¶ 21-22. Second, there is no evidence that the prison transfer interfered with plaintiff's care. As noted in the background facts, he continued to

---

[1] In his opposition, plaintiff argues that Youssef knew that a hold was necessary because he reviewed a grievance concerning this issue. ECF No. 46 at 17. The grievance in question was answered by Youssef in July 2022, well after the transfer to High Desert had been completed. *Id.* at 30. Thus, there is no evidence that Youssef was aware, at the time of the transfer, that plaintiff desired a medical hold.

6

receive care for his eye while at that facility and, in August 2022, saw Dr. Bonds, the specialist who initially recommended that he receive surgery. ECF No. 38-3 at 15. Accordingly, I find that defendant Youssef is entitled to summary judgment on plaintiff's Eighth Amendment claims against him.

### B.  Defendant Branch

Plaintiff alleges that defendant Branch, a physician at High Desert State Prison, failed to schedule his surgery in August 2022. ECF No. 1 at 4. In his motion for summary judgment, Branch argues that, at the time Dr. Bonds recommended surgery, plaintiff was housed in Kern Valley State Prison, and staff at that prison were responsible for scheduling the procedure. ECF No. 38-3 at 2 ¶¶ 5-7. They did so, but, as noted in the factual background, neither Dr. Bonds nor Dr. Tawansy was able to perform the surgery. Then, plaintiff was referred to Dr. Pektar, who opined that surgery was ill-advised. This chain of events provides no support for plaintiff's view that Dr. Branch acted with deliberate indifference, either with respect to scheduling surgery or in any other treatment capacity.

### C.  Defendant Miranda

Plaintiff alleges that, during a healthcare encounter, defendant Miranda informed him that he would see an ophthalmology provider onsite and be scheduled for eye surgery, but months passed without him seeing a specialist. ECF No. 1 at 4. Plaintiff met with Miranda on June 28, 2022. ECF No. 38-4 at 2 ¶ 4. At that time, Miranda believed that staff at Wasco had scheduled a follow-up with Dr. Bonds, but that it was not showing on plaintiff's chart yet because it could take three weeks for an offsite appointment to be scheduled and to appear in the system. ECF No. 38-4 at ¶ 5. Plaintiff met with Miranda again on July 20, 2022, and, after looking at the system again, the latter realized the appointment had not been ordered. *Id.* at 3 ¶ 6. Miranda submitted a request for an appointment with Dr. Bonds the following day. *Id.* at 3 ¶ 7, 5. The evidence shows that, at most, Miranda was negligent in failing to check the system between June 28 and July 20, 2022, to ensure that the appointment with Bonds had been confirmed. As stated above, negligence is insufficient to support a medical deliberate indifference claim. There is no evidence that Miranda was aware of a risk to plaintiff's health but ignored it. *See Toguchi*, 391 F.3d at

7

1057 ("A prison official acts with deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.") (internal quotation marks omitted, alterations in original).  Neither has plaintiff put forward any medical evidence that the delay in scheduling the appointment caused him harm.  He does argue that, by not having surgery in June or August of 2022, he developed a complication in his retina and lost vision in his left eye.  ECF No. 46 at 8, 12, 15.  These are the assertions of a layman, however, and he has not provided any medical evidence to support them.  I find that Miranda is entitled to summary judgment.

         D.        Plaintiff's Sur-Reply

After briefing on defendants' motion for summary judgment was closed, plaintiff filed an unauthorized sur-reply, wherein he enclosed a letter from Dr. Bonds stating that, on June 14, 2022, "[plaintiff] was referred to a retinal surgeon here in our facility and unfortunately the surgeon is not contracted to see inmates . . . ."  ECF No. 50 at 8.  Dr. Bonds goes on to reference the aforementioned appointment with plaintiff on August 23, 2022, wherein he again recommended surgery.  *Id.*  Defendants argue that the letter is unauthenticated.[2]  Even accepted, however, I find that it does not create a genuine dispute of fact as to whether any defendant acted with deliberate indifference.  Dr. Bonds' belief in surgery was already known and, after prison officials unsuccessfully attempted to schedule surgery with his office, they turned to another specialist in Dr. Pektar.  That specialist offered a different opinion.  Nothing in Dr. Bonds' letter indicates that any of the three defendants named here acted with deliberate indifference in their interactions with plaintiff.  To the contrary, plaintiff received substantial care, including specialist appointments, for his eye.  Unfortunately, his vision could not be saved.  Negative health outcomes are not necessarily indicative of poor treatment, however, and summary judgment is warranted here.

                                       Conclusion

Accordingly, it is ORDERED that:

1.        Plaintiff's motion to provide a clear/visible photograph, ECF No. 35, is DENIED.

---

[2] Defendants' motion to file a sur-sur-reply, ECF No. 51, is granted.

    2.          Defendants' motion to file a sur-sur-reply, ECF No. 51, is GRANTED.

    3.          The Clerk of Court shall assign a district judge to this action.

Further, I RECOMMEND that defendants' motion for summary judgment, ECF Nos. 30 & 38, be GRANTED and judgment be entered in their favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    December 3, 2024   

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

9